# Commonwealth *versus* Duffy.

1. Under the 77th section of the Criminal Procedure Act of March 31st 1860, the limitation of prosecutions for forgery, as a misdemeanor, is two years and not five.

2. The Act of March 23d 1877 provides, " That hereafter the offence of forgery, whether the same be a misdemeanor or a felony, shall not be held barred by the Statute of Limitations, when the indictment therefor shall be brought or exhibited within five years next after the offence has been committed:" *Held*, that said act works no change in the rules of evidence or *quantum* of proof and is not an *ex post facto* law within the meaning of the federal and state Constitutions when applied to a case which was only subject to a bar of two years when the offence was committed.

3. An act of limitation is an act of grace purely on the part of the legislature, and especially is this the case in the matter of criminal prosecutions. The state makes no contract with criminals, at the time of the passage of an act of limitations, that they shall have immunity from punishment if not prosecuted within the statutory period. Such enactments are measures of public policy only. They are entirely subject to the mere will of the legislative power, and may be changed or repealed altogether as that power may see fit to declare.

4. When a right to acquittal has not been absolutely acquired by the completion of the period of limitation, that period is subject to enlargement or repeal without being obnoxious to the constitutional prohibition against *ex post facto* laws.

November 25th 1880.    Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.    SHARSWOOD, C. J., absent.

Error to the Court of Quarter Sessions of *Crawford county:* Of October and November Term 1880, No. 255.

Indictment of J. C. Duffy for forgery.

In the month of September 1875 the defendant was in the employ of the Howe Machine Company, as its agent, for the sale of its sewing machines. He was then residing in the county of Armstrong, Pennsylvania, and was employed by the said company to sell machines in that vicinity. On or about the 23d of September 1875 he sold a machine to a Mrs. P. J. Wolf, of Templeton, county of Armstrong, for the sum of $75, for which he took her note, payable to the Howe Machine Company one year thereafter. It was his duty, as agent, once every week, to make report of all sales and business done by him to B. F. Porter, manager of the company, at his office in the city of Meadville, Pa. Duffy kept the original note and sent by mail on or about the 25th of September 1875 a copy of it, to which he forged the name of P. J. Wolf, to B. F. Porter at Meadville, by whom it was received.

[Commonwealth *v.* Duffy.]

This note was placed to his credit on the books of the company, and by Porter sent to the office of the company at Pittsburgh. Shortly thereafter Duffy left the employ of the Howe Machine Company, and when the year had elapsed the note was forwarded for collection, but it was returned, they stating that it could not be collected. The note was subsequently, about December 1877, sent for collection to Kittanning. It remained there uncollected until the collecting agent of the company, about the fall of the year 1878, went to Templeton and saw Mr. and Mrs. Wolf and demanded payment of the note. Mrs. Wolf claimed that she had paid for the machine and in verification thereof produced the original note, and upon being shown the one in the possession of the company declared it a forgery. This was about the — day of — 1878. Shortly thereafter the Howe Machine Company on the — day of January 1879, made complaint against Duffy for forgery and uttering a forged note, and he was thereupon arrested. On February 9th 1880, in the Quarter Sessions of Crawford county, February term 1880, an indictment was presented and a true bill found against him. The defendant then filed a motion to quash the indictment, which was overruled and the defendant ordered to plead. The cause was continued until the May sessions when the defendant pleaded not guilty. He then again contended that the indictment not having been found within two years was barred by the statute.

The court reserved its opinion, stating if the defendant should be convicted it would entertain a motion in arrest of judgment when the question could be argued. Thereupon the defendant went to trial and the jury found him guilty on the second count in the indictment, namely, for uttering a forged note, &c. The motion in arrest of judgment was then filed, argued, and upon July 10th 1880, the motion in arrest of judgment was granted, the court, Church, P. J., filing the following opinion:

" This defendant was convicted of uttering a forged instrument of writing under the 169th section of the Act of 1860, the criminal code. This offence is by that section made a misdemeanor. On the trial the defendant raised the question and asked us to charge the jury that he could not be convicted because it appeared both from the indictment and the evidence that the offence charged had not been committed within two years of the time the indictment was preferred against him. We left the jury to find the actual guilt or innocence of the defendant and reserved the question of the Statute of Limitation to be determined, if a conviction followed by motion in arrest of judgment. That motion is now before us and it raises the simple question whether this offence of uttering a forged promissory note of an individual having been committed on or about the 23d of September 1875, was barred of an indictment found February 9th 1880.

[Commonwealth *v.* Duffy.]

"Some kind of forgeries defined in the Criminal Code are felonies. They are to be found described in the Criminal Code from section 164 to 168 inclusive. They include among other things 'the falsely and fraudulently making, forging or counterfeiting bank notes, or bankers' checks and drafts, and also offences against the current coin of the government. Other kinds of forgeries, especially as defined in section 169 of the Code are misdemeanors. They comprise the fraudulently making, signing, altering or publishing any written instrument (other than notes, bills, checks or drafts already mentioned) to the prejudice of another's rights,' &c. It is under this latter section the defendant is convicted.

"The section of the code limiting prosecutions provides, inter alia, 'That all indictments brought or exhibited for any crime or misdemeanor, murder, &c., excepted, shall be brought and exhibited within the time and limitation hereinafter expressed, and not after, that is to say, all indictments of prosecutions for treason, arson, * * * perjury, counterfeiting, forgery, uttering or publishing any bank notes, checks, and drafts, &c., * * * shall be brought and exhibited within five years next after the offence shall have been committed, and all indictments and prosecutions for other felonies not named or excepted heretofore in this section, and for all misdemeanors (perjury excepted) shall be brought or exhibited within two years next after such felony or misdemeanor shall have been committed.' It is manifest from the reading of this section that the 'forgery' named, for which there is a five years' limitation, is the forgery of bank notes, checks or drafts, which had been made a felony. The word is in close and immediate connection with the counterfeiting, uttering and publishing the bank notes, checks and drafts, and although a better word in this sentence would have been *forging* rather than *forgery*, the construction contended for cannot be doubted. We are aided in this construction by the next clause, 'And all indictments for all misdemeanors, perjury excepted, shall be brought within two years.'

"This offence, then, of what we may call 'common forgery,' is forgery at common law; and being a misdemeanor, is barred by the two year limitation. This construction is not a forced one; but the natural, reasonable and fair construction of the section. Any other would do violence to the force of language and the grammatical and logical construction of the paragraph. The legislature evidently thought this distinction was made, for on the 23d of March 1877 they passed the following act: 'That hereafter the offence of forgery, whether the same be a misdemeanor or felony, shall not be held barred by the Statute of Limitation when the indictment therefor shall have been brought or exhibited within five years next after the offence has been committed.'

"It is claimed by the Commonwealth that even if before this act was passed, the limitation for this offence was only two years,

yet this act extended the limitation to five years, and yet the act applies to the indictment before us. It will be borne in mind that this offence was committed 23d September 1875. The two years limitation of the Act of 1860 had not elapsed on March 23d 1877, when the five year limitation act was passed, but the two years had much more than expired when this indictment was found. The act of 1877 provides that ' hereafter the offence of forgery shall not be held barred,' &c. Does it not apply to future offences, and to future offences only? Laws are presumed to be prospective rather than retrospective. There is no canon of construction better settled than this: that a statute shall always be interpreted so as to operate prospectively and not retrospectively, unless the language is so clear as to preclude all question as to the intent of the legislature—because retrospective laws and laws divesting vested rights, though they may not be repugnant to any fundamental law, are repugnant to all principles of sound and wise legislation: Taylor v. Mitchell, 7 P. F. Smith 209; Dewart v. Purdy, 5 Casey 113, and cases cited in Bright. Dig. p. 2205. Can it be said from any language used by the legislature that they intended this act to have retroactive effect, and affect crimes and offences already committed? The actual language used is just the other way. It says: ' Hereafter the offence,' &c., that is to say, ' that which, after this time, shall be or become an offence,' &c. This law would have been perfect in phraseology, clear and direct in meaning and purpose, if the word ' hereafter' had not been used at all; why then put this word in the act, if it had not rather been the intention of the law-making power to make it expressly prospective and definitely inapplicable to crimes and offences already committed. I am impelled, therefore, to the conclusion that this Act of 1877 was intended to be, and is, prospective only in its operation, and hence does not apply to the offence committed in 1875.

"If, however, the act in question be retrospective as well as prospective, it would apply to this case.and govern it, unless it partook also of the nature of an *ex post facto* law, and, therefore, repugnant to the Constitution of the United States and the Constitution of this Commonwealth. A retrospective law is not necessarily an *ex post facto* law. The former, is not *ex post facto*, is constitutional and operative. An *ex post facto* law is prohibited by the state and United States Constitutions, and is, therefore, void and of no effect. What, then, is an *ex post facto* law? This question cannot be answered better than in the language of an eminent jurist, SHARSWOOD, C. J., in note to p. 47 of 1st Black. Com. * * *

"At the time of the commission of this offence in September 1875, the law required the Commonwealth, in order to convict the defendant, to prove that he committed the crime within two years from the exhibition of the indictments. At the time of the trial,

[Commonwealth *v.* Duffy.]

the law only required the Commonwealth to prove that the defendant committed the crime within five years of the time of the exhibition of the indictment. Is not that an alteration of the legal rules of evidence? Does it not make the testimony different and less than the law required at the time of the commission of the offence, and render such less and different testimony sufficient in order to convict the offender? It seems to me that an affirmative answer must be given to these evident propositions. The difficulty or ease with which testimony may be procured and rendered, is not the criterion, but the quantum of proof required is to be taken as the standard by which the rights of the Commonwealth are to be judged, and just as true as five years is more than two years, so true is it that the testimony required of the Commonwealth in the former case is less than in the latter. I hold, then, that the Act of 1877, in so far as it can or may be construed to operate on offences committed before its passage and tried afterwards, is retrospective and *ex post facto* and therefore unconstitutional and of no effect, as to that offence.

"Of course, that the law is good and operative on all offences committed after its passage, no one questions. In conclusion : I have shown that the indicted crime is a misdemeanor, and by the Act of 1860 was barred from indictment at the end of two years. That the Act of 1877 was prospective only and not retrospective, and was not intended to apply to crimes committed before its passage, and that if it be retrospective, it was and is, as to the crimes under consideration, *ex post facto*, and therefore as to that crime unconstitutional and void. The reserved point is therefore decided in favor of the defendant, and this motion in arrest of judgment is granted, and the judgment on the verdict is arrested."

This action of the court was assigned for error by the Commonwealth which took this writ.

*George F. Davenport*, District-Attorney, and *Thomas Roddy*, for the Commonwealth.—To quiet any doubt which may have existed as to the intent of the legislature at the time of the passage of the 77th section of the Act of 1860, the Act of 23d March 1877, was passed. The Limitation Act of 1860 was, and is the act, supplemented by the Act of 1877, which the defendant must interpose to prevent the passing of sentence. But it is argued that the Act of 1877 is retroactive and retrospective, and hence, partakes of the characteristics of an ex post facto law. This, if true, we admit, if it effected any vested rights or contract, would render it as to all matters prior to its passage inoperative, but we claim that the law is not retrospective nor ex post facto. An Act of Limitation is an act of grace and not of right, in its fullest sense. It has nothing to do with the offence ; it neither adds to nor takes from. The court below predicates something of the difference of time, but the

[Commonwealth v. Duffy.]

maxim, *nullum tempus occurit regi*, certainly applies.   It did
not create a punishment for an act after it was committed, nor
aggravate the offence and make it greater than when committed
—nor change the punishment and inflict a greater than the law
annexed to the crime when committed, nor change the rules of
evidence, and make less or different testimony than the law re-
quired at the time of the commission of the offence sufficient to
convict—and hence is not ex post facto.   But an Act of Limitation
may be retroactive: Kenyon *v.* Stewart, 8 Wright 191.   A ret-
rospective act which merely touches the remedy by removing a
technical impediment is constitutional : Hinckle *v.* Riffert, 6 Barr
196.   The legislature, provided it violates no constitutional prohi-
bition, may pass retrospective laws which affect suits pending,
giving a party a remedy that he did not previously possess, modi-
fying an existing one or removing an impediment in the way of
legal proceedings : Schenley *v.* Cmmonwealth, 12 Casey 29 ; Hep-
burn *v.* Curts, 7 Watts 300 ; Waters *v.* Bates, 8. Wright 473.
The two years had not elapsed at the time the Act of 1877 was
passed, hence defendant had not acquired (if he had any) vested
rights.   It is competent for the legislature to alter the period of
limitation : Miller *v.* Commonwealth, 5 W. & S. 488.   An action
may be barred by a statute passed after the cause of action accrued,
if a reasonable portion of the time of limitation remain after the
enactment of the statute : Howell *v.* Howell, Am Law Reg.,
(N. S.), vol. 3, p. 378, citing and approving, Parker *v.* Kane, 4
Wis. 1.

*J. B. Brawley* and *A. B. Richmond*, for defendant in error.—
We rely upon the able and exhaustive opinion of the court below.
There is no canon of construction better settled than this, that a
statute shall always be construed so as to operate prospectively and
not retrospectively, unless the language is so clear as to preclude
all questions as to the intent of the legislature : Taylor *v.* Mitchell,
7 P. F. Smith 211 ; Bedford *v.* Shilling, 4 S. & R. 408 ; Neff's
Appeal, 9 Harris 243 ; Becker's Appeal, 3 Casey 52 ; Price *v.*
Mott, 2 P. F. Smith 315.   When a retrospective law affects crime
it is ex post facto.   The law would be ex post facto if it sought to
enlarge the bar from two to five years, thereby changing the proof
necessary to convict under the law as it stood when the offence was
committed.   What is an ex post facto law has been judicially
determined : 1 Blackst. Com. 46, note by Sharswood ; Calder et
ux. *v.* Bull et ux., 3 Dall. 386 ; Satterlee *v.* Mathewson, 2 Pet.
380 ; Fletcher *v.* Peck, 6 Cranch 148 ; Watson *v.* Mercer, 8 Pet.
88.   In the Act of 1877 the legislature used language which it
would seem plainly, declares that they intended the law to apply
only to future offences.   It declares, " that hereafter" the offence

of forgery, &c.    There is certainly no reason for saying that this law applied to past offences committed long prior to its passage.

Mr. Justice GREEN delivered the opinion of the court, January 3d 1881.

We are of opinion that under the 77th section of the Criminal Procedure Act of 31st March 1860, the limitation of prosecutions for forgery as a *misdemeanor* is two years and not five.    It is true the first clause of the section enumerates "forgery" as one of the offences subject to the five years' limitation, and were there not other considerations affecting the question we should hold that the limitation of five years applied to all forgeries.    But the concluding clause of the section positively enacts that all indictments and prosecutions "for all misdemeanors, perjury excepted, shall be brought or exhibited within two years next after such * * * misdemeanor shall have been committed."    Of course the legislature did not intend to say that there should be two different periods of limitation for the same offence in the same act.    As certain forgeries are felonies, and others are misdemeanors, the reasonable construction of the act is that the former are barred only after five years and the latter after two years.    The legislature must have supposed that this was the true interpretation of the Act of 1860, because in 1877 they enacted a new law, making a uniform limitation of five years in all cases of forgery, "whether the same be misdemeanor or felony."    They thus recognised the distinction between the two kinds of forgery, and necessarily proceeded upon the assumption that they were not subject to the same limitation, prior to the passage of the latter act.    The act would have been useless upon any other theory.    If the limitation was five years before, there was no occasion to pass an act to say that, thereafter, it should be five years.

The next and most important question is, as to the effect of the Act of 1877 upon a case where the forgery was a misdemeanor, and the two years' limitation had not expired at the time of its passage.    Such is the present case, and it presents this exact question.    The learned judge of the court below held that to apply the law to a case in which the offence had been previously committed would make it retro-active, and, as it related to a criminal subject matter it would be an *ex post facto* law, and therefore void under both the federal and state Constitutions.    If this view of the case were correct, the conclusion of the court below, that the case was subject only to the two years' limitation, would be right, and we should be obliged to affirm the judgment.    But we are quite unable to agree with the reasoning of the learned judge on this subject, and have therefore reached a different conclusion.    The language of the Act of 1877 is as follows: "That hereafter the offence of forgery, whether the same be a misdemeanor or a felony, shall not

be held barred by the Statute of Limitation when the indictment therefor shall have been brought or exhibited within five years next after the offence shall have been committed. It is true that this language, as well as the title of the act, are somewhat indicative of an intent that the Act of 1877 should be regarded as declaratory of the meaning of the Act of 1860, but we prefer to rest the decision of the case upon a larger and broader ground. It is contended that the word "hereafter," in the connection in which it occurs, imports that the act was only intended to apply to cases in which the offence was committed after the passage of the act. We cannot so read it. The word "hereafter" in the act is connected with and qualifies, the expression, "shall not be held barred," &c.; that is, hereafter, when the Statute of Limitations is pleaded to an indictment for forgery it shall not be held barred if it shall have been brought within five years after the commission of the offence. The defendant would have us read the word "hereafter" as relating to the time of the commission of the offence, whereas in truth, it relates only to the time when the question is raised, and the court is required to decide it. "Hereafter it shall not be held," &c., is the precise connection of the words. This is rendered quite plain by simply transposing the word to its more appropriate position and reading it thus—that the offence of forgery, whether the same be misdemeanor or felony, shall not hereafter be held barred by the Statute of Limitations when the indictment therefor shall have been brought or exhibited within five years next after the offence has been committed." It is argued by the learned judge that the act is *ex post facto* if applied to past offences, and he bases his reasoning upon the very precise and comprehensive definition given by the present chief justice in his valuable edition of Blackstone's Commentaries, vol. 1, p. 47. That definition is as follows: "An *ex post facto* law is one which renders an act punishable in a manner in which it was not punishable when it was committed. Every law that makes an act done before the passing of the law, and which was innocent when done, criminal, or which aggravates a crime and makes it greater than it was when it was committed, or which changes the punishment and inflicts a greater punishment than the law annexed to the crime when committed, or which alters the legal rules of evidence, and makes less or different testimony than the law required at the time of the commission of the offence sufficient in order to convict the offender, falls within this definition." The learned judge of the court below argues that it would be altering the legal rules of evidence to apply the new bar of five years to a case which was only subject to the bar of two years when the offence was committed. The reasoning is that the Commonwealth in the one case would be required to prove that the offence was committed within two years, and in the other within five years, and because five years are more than two, "the testimony required of the Commonwealth in the

15 Norris—33

[Commonwealth *v.* Duffy.]

former case is less than in the latter." This argument assumes that there is something more to be proved than the commission of the offence. But it will be seen at once that whether the bar be five years or two years, the proof of the Commonwealth is precisely the same in either case. The *period of limitation* is not a subject of proof at all. The Commonwealth proves that the offence was committed, giving the circumstances in evidence, and necessarily as a part of the *factum*, the time when it was committed. If then it happens that *the law* interposes a bar to a conviction if the offence was committed more than two years before the finding of the indictment, and such was the fact in a given case, there can be no conviction. But if the bar were five years, the freedom from conviction would not arise till after five years had elapsed. In each case the actual proof is precisely the same. The Commonwealth proves no more and no less in one case than in the other. Hence, both the *quantum* of proof and the rules of evidence are the same in both cases, and there is no change in these respects in changing the time of the bar.

At the time the Act of 1877 was passed, the defendant was not free from conviction by force of the two years' limitation of the Act of 1860. He therefore had acquired no *right* to an acquittal on that ground. Now an act of limitation is an act of grace purely on the part of the legislature. Especially is this the case in the matter of criminal prosecutions. The state makes no *contract* with criminals, at the time of the passage of an act of limitation, that they shall have immunity from punishment if not prosecuted within the statutory period. Such enactments are measures of public policy only. They are entirely subject to the mere will of the legislative power, and may be changed or repealed altogether, as that power may see fit to declare. Such being the character of this kind of legislation, we hold that in any case where a right to acquittal has not been absolutely acquired by the completion of the period of limitation, that period is subject to enlargement or repeal without being obnoxious to the constitutional prohibition against *ex post facto* laws. A law enlarging or repealing a statutory bar against criminal prosecutions may, therefore, apply as well to past as to future cases if its terms include both classes. Such legislation relates to the remedy only and not to any property right or contract right. The Act of 1877 in the present case was legally operative to enlarge the period of limitation as to the defendant, he having acquired no right of acquittal by virtue of the previous limitation at the time of the passage of the act. It follows from these considerations that the learned judge of the court below was in error in entering judgment in favor of the defendant on the point reserved and in arresting the judgment. That retroactive legislation is not necessarily unconstitutional, especially where it only affects remedies, has been so many times decided that a mere

[Commonwealth *v.* Duffy.]

reference to some of the authorities will be sufficient : Satterlee *v.* Matthewson, 16 S. & R. 179 ; Hepburn *v.* Curts, 7 Watts 300 ; Kenyon *v.* Stewart, 8 Wright 191 ; Schenley *v.* Commonwealth, 12 Casey 29 ; Waters *v.* Bates, 8 Wright 473.

> Judgment reversed and record remanded with this opinion, setting forth the cause of reversal to the court of Quarter Sessions of Crawford county for further proceedings.